IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,226

In the Matter of KENNETH J. GENIUK,
*Respondent.*

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed February 23, 2018. Disbarment.

*Danielle M. Hall*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

No appearance by respondent.

PER CURIAM:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Kenneth J. Geniuk, of Gladstone, Missouri, an attorney admitted to the practice of law in Kansas in 2007.

On April 11, 2017, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent did not file an answer. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on June 13, 2017, where the respondent did not appear. The hearing panel determined that respondent violated KRPC 5.5(a) and (b) (2018 Kan. S. Ct. R. 363) (unauthorized practice of law); 7.1(a) (2018 Kan. S. Ct. R. 372) (communications concerning a lawyer's services); 8.3(a) (2018 Kan. S. Ct. R. 380) (reporting professional misconduct); 8.4(d) (2018 Kan. S. Ct. R. 381) (engaging in conduct prejudicial to the administration of justice); Kansas Supreme Court Rule 207(c) (2018 Kan. S. Ct. R. 246) (failure to report action); Kansas Supreme Court Rule 208(c) (2018 Kan. S. Ct. R. 246) (failure to notify Clerk of the

1

Appellate Courts of change of address); and Kansas Supreme Court Rule 211(b) (2018 Kan. S. Ct. R. 251) (failure to file answer in disciplinary proceeding).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"7.     The Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas on September 28, 2007. On September 18, 2013, the Kansas Supreme Court issued an order suspending the respondent's license to practice law for failing to comply with the annual requirements to maintain a law license. The order of suspension was mailed *via* certified mail to the respondent's registration address. The respondent's license remains suspended. [Footnote: The respondent's license to practice law in Kansas had previously been suspended on September 14, 2012. As such, the Supreme Court issued an order of suspension. In October, 2012, the respondent complied with the requirements and sought and obtained reinstatement of his license in Kansas.]

"8.     The Missouri Supreme Court admitted the respondent to the practice of law on April 16, 2008. On June 28, 2016, the Missouri Supreme Court issued an order indefinitely suspending the respondent's license to practice law for having violated Rule 1.3 (diligence) and 1.4 (communication).

"9.     After the respondent's license to practice law in Kansas was suspended by the Supreme Court, the respondent engaged in the unauthorized practice of law.

"10.     On January 6, 2015, the respondent entered his appearance on behalf of the natural father in [a] child in need of care case filed in Wyandotte County, Kansas, case number 2014JC217. The respondent entered his appearance using a generic form with hand-written case specific information. On the respondent's entry of appearance, the

2

respondent listed an address in Kearney, Missouri. The respondent included his Kansas bar number next to his name.

"11.     That same day, the respondent appeared with his client in that case for a review hearing. The respondent failed to inform his client, opposing counsel, and the court that his license to practice law in Kansas had been suspended.

"12.     On April 17, 2015, the respondent appeared on behalf of his client for another review hearing. Again, the respondent failed to inform his client, opposing counsel, and the court that his license to practice law in Kansas has been suspended.

"13.     On July 27, 2015, the Honorable Daniel Cahill received notice from staff that the respondent's license to practice law in Kansas was suspended in 2013. After learning that the respondent's Kansas license had been suspended, Judge Cahill searched for the respondent's contact information. Because the respondent's license was suspended, when Judge Cahill searched the Kansas Online Attorney Directory for the respondent's name, the search yielded no results. Judge Cahill located the respondent's contact information on the Missouri Attorney Directory.

"14.     That same day, the respondent appeared before Judge Cahill for another review hearing. After the respondent stated his appearance, Judge Cahill inquired whether the respondent was a licensed Kansas attorney. The respondent asserted that he was a Missouri lawyer and appeared by the authority of KRPC 5.5(c)(2).

"15.     KRPC 5.5(c)(2) provides:

'(c)     A lawyer admitted in another United States jurisdiction and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that:

. . . .

(2)     are services in or reasonably related to a pending or potential proceeding before a

3

tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized.'

"16.     The respondent argued that KRPC 5.5(c)(2) applied because he planned to file a paternity action in Missouri after the child in need of care case was resolved. The respondent, however, did not disclose that he had a Kansas license to practice law and that his license had been suspended for failing to comply with the annual requirements to maintain a license.

"17.     Judge Cahill disagreed with the respondent's interpretation of KRPC 5.5(c)(2) and informed the respondent that he was not authorized to practice law. Judge Cahill directed the respondent to leave counsel table.

'[Judge Cahill] observed [the respondent's client] approach [the respondent] and have a brief conversation with him. The [client] then immediately turned to the Court and requested certain documentation. It was clear from this exchange that [the respondent] was continuing to advise [his client] on legal matters even after the Court had informed him that he was ineligible to do so.'

"18.     Even though the respondent argued that he was authorized to represent his client by virtue of KRPC 5.5(c)(2) and his Missouri license to practice law, in his entry of appearance, the respondent included his Kansas bar number, the respondent did not include his Missouri bar number, and the respondent did not reference KRPC 5.5(c)(2).

"19.     After the respondent's appearance on July 27, 2015, Judge Cahill confirmed that the respondent had a Kansas license which had been suspended.

"20.     Also on July 27, 2015, Judge Cahill filed a complaint with the disciplinary administrator's office against the respondent.

4

"21.     The respondent provided a written response to the complaint. In the respondent's response, the respondent stated:

'This letter is in response to your letter of July 29, 2015, regarding the above referenced disciplinary matter. As a prefatory note, your letter was addressed to an office I have not maintained since about January of last year. The envelope, however, appears to have a label covering the old address, and as such the letter was resent to my current address. From my receipt of the letter, I am within the 20 days in which you requested a response. However, based on the date of the letter, said 20 days has already expired. I left you a voice mail about this earlier today.

'To address the complaint filed by Hon. Daniel Cahill, it is true that I entered my appearance on behalf of and represented [T.F.] in case number 2014 JC 217 now pending in the District Court of Wyandotte County, Kansas. [T.F.] contacted me last year with regard to his situation, as set forth below.

'[T.F.] is [a] resident of the State of Missouri. He resided in Missouri with his girlfriend and his daughter, [A.F.]. Last year, his girlfriend left him and moved to an unknown location in the State of Kansas. She had already been gone several weeks when [T.F.] contacted me. His desire was to gain custody of his daughter. In Missouri, "child custody" is a matter to be determined as an issue in an underlying case, and with limited exceptions not applicable to [T.F.]'s situation, is not a stand alone proceeding. Since [T.F.] was not married to his child's mother, the way to plead this in Missouri is through a paternity action. This is a common practice in Missouri—i.e., even where paternity is not disputed, a paternity action is filed in order to establish rights of custody and child support.

5

'I prepared pleadings to file in Jackson County, Missouri. I explained to [T.F.] that, pursuant to [the] Uniform Child Custody and Jurisdiction Act, Missouri would likely be determined to be the home state of the child for child custody determination. However, since she had already moved to Kansas, we may need to have a hearing regarding which state is appropriate for jurisdiction if it was determined by the Missouri courts that the child had no home state, since the child technically did not reside within any one state for the six months prior to when we intended to file.

'The filing of the paternity matter was delayed for a time, as we were attempting to locate where, exactly, in Kansas the mother had moved to so that we could list her location on the summons for service. Before we could locate her and file the Missouri action, however, the child was taken into custody by the Kansas Department of Social Services, and a CINC case was filed in the child's interest in juvenile court in Wyandotte County, Kansas.

'I met with [T.F.] about this, and advised that since the State of Kansas now has asserted jurisdiction and made an initial child custody determination, that the Kansas proceedings would need to terminate, and Wyandotte County release jurisdiction, before we could explore a paternity action in Missouri for child custody. I also explained, however, that in order for Missouri to be able to have jurisdiction over the child, he would need to participate in the Wyandotte County case and try to be granted placement of the child with him in Missouri. If he received placement, once the Kansas court released jurisdiction, we could then file the action in Missouri as originally intended. I also advised him, however, that the possibility remained that once Wyandotte County released jurisdiction, child custody matters may still need to be heard in Kansas, depending on if the Missouri court would decide whether it could maintain the intended action under the provisions of the UCCJEA.

6

'[T.F.] asked me if I could represent him in the Kansas juvenile proceeding heretofore described. I had already let my Kansas license expire, as I did not pay the annual registration fees or complete the Kansas CLE requirements. As such, I turned to the Rules to see if there was a way for me to provide legal services in Kansas under the circumstances.

'Pursuant to Rule 226, Section 5.5(c)(2), it appeared that I would [be] able to represent [T.F.] in the Wyandotte County case because the Wyandotte County proceeding was reasonably related to the paternity action that we intended to file in Jackson County, Missouri, as heretofore described. Admittedly, the rule does provide that the out-of-state attorney must not be disbarred or suspended in any jurisdiction in order to so appear, and as such I checked for my name and bar number under the Kansas Judicial Branch's online attorney search. No information was returned, and as such I assumed that my license had expired, as I previously believed, as opposed to being suspended. Based on that, I determined that I would be able to represent [T.F.] in the Wyandotte County action under Rule 226, Section 5.5(c)(2), as previously noted.

'I entered my appearance in January, 2015, and appeared at review hearings in Wyandotte County on January 6, 2015, April 17, 2015, and again on July 27, 2015. At the July 27, 2015 hearing I was asked by Judge Cahill, the complainant herein, whether I was licensed to practice in Kansas. I advised him that I was not, but that I was able to represent [T.F.] under the provisions of Rule 226, Section 5.5. I further explained that it was our intention to file a paternity action in Missouri once Wyandotte County released jurisdiction (which, based on the progress of the proceedings, is likely to occur since reunification is the permanency goal). Judge Cahill then asked the parties whether paternity was contested, and was advised that paternity is NOT contested, and that [T.F.] is on the child's birth certificate. I do not believe that Judge Cahill understood that the filing of a paternity action in Missouri was not to adjudicate paternity, but that it was the mechanism by which to obtain

7

custody orders for the children of unwed couples. I was not given an opportunity to explain this any further. Judge Cahill also advised me that he did not believe the Rule applied, and that I should have sought admission *pro hac vice*. He further advised me that this is the way it is normally done, and that there is a difference between "providing legal services" under Rule 226 and appearing before the Court.

'I did not intend to engage in the unauthorized practice of law, and believed that my appearance in the Wyandotte County matter was authorized under Rule 226, Section 5.5(c)(2), as previously noted. Yes, my website indicates that I serve the entire Kansas City metro area. I often receive calls from Kansas residents who have matters that need to be resolved in Missouri, and I am simply noting a geographical search area for web-based users. It is to generate traffic to my website. I do not hold myself out as being licensed to practice in Kansas, nor do I accept representation of matters that must be adjudicated in Kansas.

'I hope this letter suffices as a response to your letter of July 29, 2015. In the event I am found to have violated the rules of professional conduct, I would request placement in the diversion program. If you have any other questions or need additional information, please do not hesitate to contact me at your convenience.'

"22.     The correspondence was originally mailed to the respondent at the respondent's registration address:  4444 N. Belleview Avenue, Suite 109, Gladstone, Missouri 64116. However, apparently, the respondent moved from that address in January, 2014. The respondent failed to notify attorney registration of his change of address. As of the date of the hearing, the respondent's registration address remained as 4444 N. Belleview Avenue, Suite 109, Gladstone, Missouri 64116. When Mr. Delaney served a copy of the formal complaint on the respondent, the respondent confirmed to Mr. Delaney that the respondent's current address is 114 Northeast 50th Court, Kansas City, Missouri.

"23. Following the respondent's administrative suspension in Kansas, the respondent maintained a website (www.kengeniuklaw.com/) which includes the following statements:

> 'The Law Office of Kenneth J. Geniuk, LLC believes in providing quality and affordable legal services to people from all walks of life. We specialize in helping people in the Kansas City metropolitan area, in both Missouri and Kansas, . . .'

In addition to his website, the respondent also maintains an attorney profile on *The Kansas City Lawyer*. After the respondent's administrative suspension in Kansas, the respondent's profile included the following statement:

> 'Ken is licensed to practice in the state courts of both Kansas and Missouri, and is also admitted to practice in the United States District Court for the District of Kansas. In addition to the state and federal courts, Ken practices in the various municipal courts throughout the Kansas City metro area.

> 'Ken's professional affiliations include memberships with the Missouri Bar, the Kansas Bar Association, the Kansas City Metropolitan Bar Association, and the Wyandotte County Bar Association.'

"24. On June 28, 2016, the Missouri Supreme Court issued an order suspending the respondent's license to practice law for an indefinite period of time for having violated Rule 1.3 (diligence) and 1.4 (communication) in four separate matters.

"*Conclusions of Law*

"25. Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 5.5, KRPC 7.1, KRPC 8.3, KRPC 8.4, Kan. Sup. Ct. R. 207, Kan. Sup. Ct. R. 208, and Kan. Sup. Ct. R. 211, as detailed below.

"26.     The respondent failed to appear at the hearing on the formal complaint. It is appropriate to proceed to hearing when a respondent fails to appear only if proper service was obtained. Kan. Sup. Ct. R. 215 governs service of process in disciplinary proceedings. That rule provides, in pertinent part as follows:

'(a)     Service upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last known office address.'

On April 11, 2017, the disciplinary administrator's office sent the respondent a copy of the formal complaint and notice of hearing to the respondent's last registration address *via* certified mail. Additionally, on April 20, 2017, William C. Delaney, special investigator with the disciplinary administrator's office, personally served the respondent with a copy of the formal complaint and notice of hearing. In this case, the disciplinary administrator complied with Kan. Sup. Ct. R. 215(a) and obtained actual personal service. The hearing panel concludes that the respondent was afforded the notice that the Kansas Supreme Court Rules require and more.

"KRPC 5.5

"27.     KRPC 5.5 prohibits the unauthorized practice of law.

'(a)     A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

'(b)     A lawyer who is not admitted to practice in this jurisdiction shall not:

. . . .

10

(2)    hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

'(c)    A lawyer admitted in another United States jurisdiction and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that:

. . . .

(2)    are services in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized.'

The facts in this case establish that the respondent violated KRPC 5.5(a) and KRPC 5.5(b). Further, KRPC 5.5(c)(2) does not authorize the respondent's practice in this case.

"28.    KRPC 5.5(c)(2) does not authorize the respondent's practice in this case because the respondent's license to practice law in Kansas was suspended. Because the respondent's Kansas license was suspended, KRPC 5.5(c)(2) does not provide a safe harbor for the respondent.

"29.    When the respondent counseled T.F., entered his appearance in T.F.'s case, and appeared before Judge Cahill, the respondent engaged in the unauthorized practice of law. The hearing panel concludes that the respondent violated KRPC 5.5(a).

"30.    In the respondent's attorney profile on *The Kansas City Lawyer*'s website, the respondent stated that he was admitted to practice law in Kansas. Because the respondent's license to practice in Kansas was suspended, the hearing panel concludes

11

that the respondent violated KRPC 5.5(b) when he held out to the public that he was admitted to practice law in this jurisdiction.

"KRPC 7.1

"31.     KRPC 7.1 provides:

'A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

(a)     contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading.'

Again, the respondent's attorney profile on the website of *The Kansas City Lawyer* clearly and falsely states that the respondent was authorized to practice law in the State of Kansas. Additionally, the respondent's website includes a statement that he represents people in both Kansas and Missouri. Because the respondent included false statements in his attorney profile and his website, the hearing panel concludes that the respondent violated KRPC 7.1(a).

"KRPC 8.3 and Kan. Sup. Ct. R. 207(c)

"32.     KRPC 8.3(a) and Kan. Sup. Ct. R. 207(c) requires attorney[s] to report misconduct. KRPC 8.3(a) provides:

'A lawyer having knowledge of any action, inaction, or conduct which in his or her opinion constitutes misconduct of an attorney under these rules shall inform the appropriate professional authority.'

12

Kan. Sup. Ct. R. 207(c) provides:

> 'It shall be the further duty of each member of the bar of this state to report to the Disciplinary Administrator any action, inaction, or conduct which in his or her opinion constitutes misconduct of an attorney under these rules.'

In four separate matters, the Missouri Supreme Court concluded that the respondent violated the rules that regulate the legal profession in the State of Missouri. Specifically, the Missouri Supreme Court concluded that the respondent violated Rule 1.3 (diligence) and Rule 1.4 (communication). The respondent failed to report his misconduct to the disciplinary administrator. The hearing panel concludes that the respondent violated KRPC 8.3(a) and Kan. Sup. Ct. R. 207(c).

"KRPC 8.4(d)

"33.     'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he entered his appearance on behalf of T.F. when he was not licensed to practice law in Kansas. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

"Kan. Sup. Ct. R. 208(c)

"34.     Attorneys must notify the clerk of the appellate courts of any change of address within 30 days of the change. Kan. Sup. Ct. R. 208(c). In the respondent's written response, he indicated that he has not been at the Belleview Avenue address since January 2014. To date, the respondent has not updated his registration information with the clerk of the appellate courts. Thus, the hearing panel concludes that the respondent violated Kan. Sup. Ct. R. 208(c) by failing to inform the clerk of the appellate courts of his change of address.

13

"Kan. Sup. Ct. R. 211(b)

"35.    The Kansas Supreme Court Rules require attorneys to file answers to formal complaints. Kan. Sup. Ct. R. 211(b) provides the requirement:

'The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

Kan. Sup. Ct. R. 211(b). The respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a timely written answer to the formal complaint. Accordingly, the hearing panel concludes that the respondent violated Kan. Sup. Ct. R. 211(b).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"36.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"37.    *Duty Violated*. The respondent violated his duty to his client to provide clear information regarding the respondent's ability to practice law in Kansas. Additionally, the respondent violated his duty to the legal profession.

"38.    *Mental State*. The respondent negligently violated his duty to his client and the respondent knowingly violated his duty to the legal profession.

"39.    *Injury*. As a result of the respondent's misconduct, the respondent caused actual injury to his client and to the administration of justice.

14

"40.    *Aggravating and Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

a.    Prior Disciplinary Offenses. The Missouri Supreme Court indefinitely suspended the respondent from the practice of law for violating KRPC 1.3 and KRPC 1.4 in four separate matters.

b.    Multiple Offenses. The respondent committed multiple rule violations. The respondent violated KRPC 5.5(a), KRPC 5.5(b), KRPC 7.1, KRPC 8.3, KRPC 8.4(d), Kan. Sup. Ct. R. 207(c), Kan. Sup. Ct. R. 208(c), and Kan. Sup. Ct. R. 211(b). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

c.    Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process. The respondent failed to file an answer to the formal complaint and appear before [the] hearing panel, despite actual notice of the proceedings. As such, the hearing panel concludes that the respondent's failure to file an answer and appear at the hearing amounts to bad faith obstruction of the disciplinary proceeding.

d.    Refusal to Acknowledge Wrongful Nature of Conduct. In the respondent's written response to Judge Cahill's complaint, the respondent refused to acknowledge the wrongful nature of his misconduct.

e.    Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 2007. At the time of the misconduct, the respondent had been practicing law for approximately eight years.

"41.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its

15

recommendation for discipline, the hearing panel, in this case, found no mitigating circumstances present.

"42.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.63     Reprimand is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client.

'7.2     Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"*Recommendation*

"43.     The disciplinary administrator recommended that the respondent's license to practice law in Kansas be indefinitely suspended.

"44.     In the respondent's written response to the initial complaint, the respondent's statement that his license had 'expired' is disingenuous at best and at worst is a knowing falsehood. The respondent's license had been suspended in 2012 and again in 2013. The evidence clearly establishes that the respondent received a copy of [the] order of suspension. The Rules Relating to Discipline of Attorneys do not provide for licenses to 'expire.' The respondent knew that his license to practice law in Kansas was suspended.

"45.     Because the respondent held himself out as licensed in Kansas when he was not, because the respondent failed to inform Judge Cahill that he had a Kansas license which had been suspended, because the respondent practiced law without a license, and because the respondent failed to participate in the disciplinary proceedings, the hearing panel concludes that a lengthy suspension is in order. Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be indefinitely suspended.

16

"46.     Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2018 Kan. S. Ct. R. 251). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint, to which he did not file an answer, and adequate notice of the hearings before the panel and this court for which he did not appear. The respondent did not file exceptions to the hearing panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2018 Kan. S. Ct. R. 255). Furthermore, the evidence before the panel establishes by clear and convincing evidence the charged misconduct violated KRPC 5.5(a) and (b) (2018 Kan. S. Ct. R. 363) (unauthorized practice of law); 7.1(a) (2018 Kan. S. Ct. R. 372) (communications concerning a lawyer's services); 8.3(a) (2018 Kan. S. Ct. R. 380) (reporting professional misconduct); 8.4(d) (2018 Kan. S. Ct. R. 381) (engaging in conduct prejudicial to the administration of justice); Kansas Supreme Court Rule 207(c) (2018 Kan. S. Ct. R. 246) (failure to report action); Kansas Supreme Court Rule 208(c) (2018 Kan. S. Ct. R. 246) (failure to notify Clerk of the Appellate Courts of change of address); and Kansas Supreme Court Rule 211(b) (2018 Kan. S. Ct. R. 251)

17

(failure to file answer in disciplinary proceeding), and it supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. The Hearing Panel recommended that respondent be indefinitely suspended. At the hearing before this court, at which the respondent did not appear, the office of the Disciplinary Administrator amended its initial recommendation that the respondent be indefinitely suspended to disbarment. It is important to note that respondent was served with notice of the hearing before this court by the clerk's office by certified mail. On January 23, 2018, the Disciplinary Administrator's office took the additional step of personally serving Geniuk with a copy of the certified letter sent previously by the clerk's office. At the time of that service, the respondent indicated he was not going to attend the scheduled January 26, 2018 proceeding before this court.

"When a respondent fails to appear before this court when facing recommendations of indefinite suspension, a sanction greater than that recommended by the Disciplinary Administrator or panel, even up to disbarment, may be warranted. Certainly, the lack of an appearance at a hearing before this court qualifies as an additional aggravator of these circumstances under consideration." *In re Barker*, 302 Kan. 156, 163, 351 P.3d 1256 (2015).

Given the uncontroverted findings of the hearing panel coupled with the additional aggravating factor of the respondent's failure to appear at his hearing before this court, we find disbarment to be appropriate in this case. A minority of the court would impose a lesser sanction of indefinite suspension.

18

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Kenneth J. Geniuk be disbarred from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(1) (2018 Kan. S. Ct. R. 234).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2018 Kan. S. Ct. R. 262) and Rule 219 (2018 Kan. S. Ct. R. 264).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.