IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,758

In the Matter of RUSSELL W. DAVISSON,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed June 15, 2018. Disbarment.

*Danielle M. Hall*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

No appearance by respondent.

PER CURIAM:  This is an uncontested attorney discipline proceeding against Russell W. Davisson, of Wichita. Respondent was admitted to the practice of law in the state of Kansas on September 12, 1975.

On September 15, 2017, the Disciplinary Administrator's office filed a formal complaint against respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). Respondent failed to file an answer to the formal complaint.

A panel of the Kansas Board for Discipline of Attorneys held a hearing on November 16, 2017. Respondent failed to appear. The hearing panel determined he violated KRPC 1.3 (2018 Kan. S. Ct. R. 292) (diligence); KRPC 1.4(a) (2018 Kan. S. Ct. R. 293) (client communication); KRPC 8.4(d) (2018 Kan. S. Ct. R. 381) (conduct prejudicial to administration of justice); Kansas Supreme Court Rule 207(b) (2018 Kan.

1

S. Ct. R. 246) (cooperation with disciplinary investigation); and Kansas Supreme Court Rule 211(b) (2018 Kan. S. Ct. R. 251) (timely answer to formal disciplinary complaint).

Upon conclusion of the hearing, the panel made findings of fact, conclusions of law, and a disciplinary recommendation. Respondent took no exceptions to the hearing panel's report. Before this court, the Disciplinary Administrator's office endorses the panel's findings and recommends disbarment. Respondent did not appear. We quote the report's pertinent parts below.

"*Findings of Fact*

. . . .

"*DA12617*

"7.    On October 18, 2011, L.B. met with the respondent to discuss filing bankruptcy. At that time, the respondent provided L.B. with a representation agreement, worksheets, and instructions detailing the requirements for filing a bankruptcy petition.

"8.    On January 6, 2012, L.B. and his wife, M.B., completed a financial management course with Access Counseling, Inc., as required by the bankruptcy court. Access Counseling, Inc. forwarded the certificate of compliance to the respondent on January 6, 2012. The respondent failed to forward the certificate of compliance to the bankruptcy court.

"9.    On February 22, 2012, L.B. and M.B. paid the respondent $900 under the representation agreement. L.B. and M.B. were to pay the balance of the respondent's fee through the Chapter 13 plan.

"10.    On April 23, 2012, L.B. met with the respondent. At the April 23, 2012, meeting, the respondent and L.B. reviewed a basic petition and discussed what a Chapter 13 plan would look like. Because a creditor was threatening to repossess the vehicle, on

2

June 15, 2012, the respondent filed a Chapter 13 petition on behalf of L.B. and M.B. with only basic information. The respondent anticipated adding additional details later. After the bankruptcy petition was filed, L.B. and M.B. began receiving collection phone calls from several creditors.

"11.     L.B. and M.B. attempted to contact the respondent by phone several times to inquire about the list of creditors, but were unsuccessful in reaching him. They left several voice mail messages for the respondent on his office phone, but the respondent never returned their calls.

"12.     After numerous attempts to contact the respondent by telephone and leaving unanswered telephone messages, L.B. and M.B. attempted to visit the respondent at his office during business hours multiple times, however, the respondent was never there and the front door was always locked.

"13.     Eventually, L.B. and M.B. slid a complete list of creditors underneath the respondent's office door. The respondent did not call L.B. and M.B. after receiving the list of creditors. At some point, the phone calls from the creditors stopped.

"14.     L.B. and M.B. were required to make monthly payments of $980.00 to the bankruptcy trustee. L.B. and M.B. successfully completed the payment plan.

"15.     On July 11, 2016, the bankruptcy trustee filed a notice of compliance of payment. In order to complete the bankruptcy, however, L.B. and M.B. needed to file a certificate of compliance with the requirement to complete a financial management course and a motion for entry of discharge.

"16.     L.B. and M.B. continued to attempt to contact the respondent without success. The respondent's failure to communicate caused L.B. and M.B. unnecessary stress. Because the respondent would not return their telephone messages, L.B. and M.B. retained James McIntyre, attorney, to complete their bankruptcy. On September 7, 2016, Mr. McIntyre entered his appearance.

3

"17.     On September 1, 2016, L.B. and M.B. filed a complaint with the disciplinary administrator regarding the respondent's conduct. On September 7, 2016, the disciplinary administrator sent a letter and copy of the complaint to the respondent and directed the respondent to submit a written response to the complaint within twenty days. The respondent did not submit a written response as directed.

"18.     Because the respondent did not file the certificate of compliance with the court, on August 28, 2016, L.B. and M.B. completed a second financial management course in order to obtain a second certificate of compliance.

"19.     On October 17, 2016, the attorney assigned to investigate L.B. and M.B's complaint called the respondent and asked him to submit a written response to the complaint. Additionally, the attorney investigator also sent the respondent a letter asking the respondent to submit a written response to the complaint. The respondent failed to provide a written response to the complaint a[s] directed.

"20.     On October 24, 2016, Mr. McIntyre filed the certificate of compliance and a motion for entry of discharge.

"21.     On November 16, 2016, the attorney investigator left a voice mail message for the respondent, indicating that he had not yet received a response to the complaint. The attorney investigator followed the telephone call with a letter to the respondent on November 17, 2016, again directing the respondent to provide a written response to the complaint. That same day, the respondent called the attorney investigator and confirmed that he would be providing a written response to the complaint. The respondent did not provide a written response as promised.

"22.     On December 8, 2016, L.B. and M.B. were discharged from their obligations with the bankruptcy court.

"23.     Because the respondent failed to provide a written response to the complaint, on January 19, 2016, the attorney investigator served the respondent with a subpoena duces tecum to appear and give a sworn statement on January 30, 2017.

4

"24.     On January 30, 2017, when he appeared for the sworn statement, the respondent provided a written response to the complaint. In the respondent's written response to the complaint, the respondent failed to explain why he did not file the certificate of compliance or otherwise complete the bankruptcy case.

"25.     During the sworn statement, the respondent explained that he did not submit a written response to the complaint prior to that day because he was 'overwhelmed by other things.' The respondent acknowledged that he did not have a justification for not timely submitting a written response to the complaint.

"26.     In representing L.B. and M.B., the respondent denied 'dropping the ball' with regard to the representation:

'Q     [By Ron Paschal] . . . Do you admit you dropped the ball with regards to your representation of them on this bankruptcy they hired you to process for them?

'A     I don't believe so.

'Q     You don't, okay. Explain that to me.

'A     The—well, I'm not sure where their—when their [dis]satisfaction arose. I originally met with [L.B.] in 2017 in the—

'Q     2017?

'A     No, I'm sorry, 2011.

'Q     Okay.

'A     And in 2011, he had a concern about his truck which was seriously underwater.

5

'Q     Okay.

'A     He owed a lot of money on his truck and needed his truck to continue to run his trucking business, he was concerned about keeping that. We—we talked about what his options were, and we can go into a lot of detail about that process, but basically we got to the point in June 2012 when Kansas Truck Center was going to repossess the truck, and they either had done it or were about to do it, and so we needed to file a Chapter 13 bankruptcy right away, which we did. He got to keep the truck.

       There was a long, drawn out process in the bankruptcy, but eventually in April 2013, his Chapter 13 case was confirmed, and under the Chapter 13 plan, he made payments for a period of time. And from—as I recall, the—from that day—he started making payments when we filed the bankruptcy, but from the date of confirmation, he had another 38 months to go to complete that Chapter 13 plan. That would have taken him into the summer of this past year, 2016.

'Q     Okay.

'A     Once the plan is completed and the trustee certifies, the Chapter 13 trustee certifies that the plan has been completed, at that point, what needs to happen is we need to file a motion—a certification and a motion for discharge, certification that he is entitled to a discharge, a motion requesting that discharge. And while it could have been done sooner, we were—when I got this

6

complaint, we were still in a position to do that, and I expected that I would be doing that.

'Q      Right.

'A      In order to get the discharge, he needed to file—or, yeah, he needed to file, both of them needed to file certificates that they had completed the financial management course, which they hadn't done. In the first indication I had that there was some problem was I—I noticed that the certificates were filed and they were filed by somebody else, not by me.

'Q      By another lawyer?

'A      By another lawyer, that's correct.

'Q      Okay.

'A      And then I received the complaint.

'Q      I spoke with both [L.B.] and [M.B.] at some length, and [L.B.] in particular, he says that he made numerous calls to your office that weren't returned. Would you dispute that or do you—

'A      I'm not aware that that happened.

'Q      Okay.

'A      I can't say it didn't happen, but I'm not aware that it did.

'Q	All right. Do you—how often do you check your answering machine?

'A	In the morning, every morning.

'Q	Is there ever an instance where its full and it can't take any more calls—

'A	Yeah.

'Q	—if that happened?

'A	Yeah. And I don't know if it's something with the machine or what, it—it's supposed to have a very large capacity, and it doesn't seem to be operating up to capacity but . . .

'Q	Okay. And he also claims he came by your office on numerous occasions to try to contact you. Were you aware that he had been trying to come by your office—

'A	No.

'Q	—and visit with you?

'A	No.

'Q	And I see you brought your file with you today, and after we're done asking some questions, I'd like to review it.

'A	Sure.

8

'Q    Do you have copies of correspondence that you sent him regarding the status of the bankruptcy?

'A    No, there wasn't any correspondence like that.

'Q    So you never, in the course of—was this a Chapter 13 bank—

'A    Chapter 13.

'Q    And so during the course of the proceedings, you didn't mail him any letters or anything saying this is the posture of the case?

'A    Usually the communication comes from the Chapter 13 trustee's office, and they sent quarterly reports, payments received and payments made, that sort of thing. But—

'Q    Did—

'A    —I don't typically do anything beyond that.

'Q    Did you—when did you become aware that they had not attended their class regarding the certificate of completion that needed to be filed, their—kind of their business management class, how did you become aware of that?

'A    Well, in a sense I have known it throughout because it hasn't been filed.

'Q    Right.

9

'A      That's not unusual with Chapter 13 clients.

'Q      Okay. And why is that not unusual?

'A      They don't absolutely have to do it until right before they
get the discharge.

'Q      Okay.

'A      In a Chapter 7, they've got to do it very quickly.

'Q      In a set period of time?

'A      In a set period of time, but they've really got more time
in which to accomplish that.'

The respondent did not acknowledge that his clients had already attended the financial management course and that the certificate had been forwarded to him in January, 2012.

"*DA12744*

"24.    In early 2010, S.G. retained the respondent to file a Chapter 13 bankruptcy case. The respondent filed the bankruptcy petition on October 18, 2011. On April 12, 2012, the court approved S.G.'s payment plan. According to the plan, S.G. was to make monthly installment payments of $275.00.

"25.    S.G. timely made the monthly payments. The bankruptcy was scheduled to be successfully discharged in January of 2016, provided the last couple of payments were made.

"26.    Unfortunately, toward the end of the payment period, S.G. was incarcerated. As a result, S.G. missed payments. S.G. was approximately $400.00 short of

10

completing his payments. On June 5, 2016, the court dismissed S.G.'s bankruptcy for failing to timely make the last couple of payments.

"27.    While incarcerated, S.G.'s mail was held for him at his prior residence. S.G. did not receive any written correspondence from the respondent at his prior residence sent during his incarcerat[ion].

"28.    On June 7, 2016, the court entered an order granting trustee's motion to dismiss and granting 21 days for conversion to Chapter 7. The court served the order on the respondent through the court's electronic mail system.

"29.    In July, 2016, S.G. was released from jail and learned that his bankruptcy was dismissed. S.G. attempted to contact the respondent regarding the bankruptcy. S.G. was not able to reach the respondent. When S.G. called the respondent, S.G. heard a message that the respondent's voice mail box was full. S.G. attempted to visit the respondent at his office during normal business hours, but the respondent was not present and the office door was locked.

"30.    On January 25, 2017, S.G. filed a complaint with the disciplinary administrator regarding the conduct of the respondent. On January 27, 2017, the disciplinary administrator sent a letter and a copy of the complaint to the respondent. The letter advised the respondent of his duty to cooperate in the investigation of the complaint and directed the respondent to submit a written response to the complaint within 20 days.

"31.    On February 27, 2017, the attorney investigator assigned to investigate the complaint reminded the respondent of his duty to cooperate with the disciplinary investigation and directed the respondent to submit a written response to the complaint. The respondent failed to provide a timely response to the complaint filed by S.G.

"32.    On March 27, 2017, the disciplinary investigator sent a second letter to the respondent, again, reminding him of his duty to cooperate and directing him to provide a written response to the complaint. The attorney investigator made it clear that the investigation would proceed without the benefit of the respondent's input if he failed

11

to contact the attorney investigator. The respondent never submitted a written response to the complaint.

"33.     On April 18, 2015, M.W. died testate. According to her will, N.W., M.W.'s nephew, was named as the executor. N.W. retained the respondent in April, 2015, to probate M.W.'s estate. N.W. retained the respondent to probate M.W.'s will because the respondent prepared M.W.'s will.

"34.     The respondent filed a petition to admit M.W.'s will to probate. On April 27, 2015, the court admitted M.W.'s will to probate.

"35.     Once the will was admitted to probate, the respondent did not communicate with N.W. until October, 2015, when the respondent requested N.W.'s assistance in filing an inventory of the estate. The inventory, however, should have been filed by May 27, 2015. The respondent filed the untimely inventory on October 13, 2015.

"36.     After the inventory was filed, N.W. repeatedly attempted to contact the respondent. N.W. did not hear from the respondent until August, 2016, when the respondent told N.W. that the estate was ready to be closed.

"37.     On September 22, 2016, the respondent sent an electronic mail message to N.W. which included a draft petition for final settlement and a waiver of notice. The respondent instructed N.W. to sign both documents. N.W. signed and returned the documents. When N.W. heard nothing further from the respondent, he attempted to call the respondent by telephone at the respondent's office. N.W. was unable to reach the respondent and was unable to leave a message because the respondent's voice mail box was full.

"38.     In early January, 2017, N.W. spoke with the respondent by telephone. During that call, the respondent promised that he would send N.W. the final estate papers

12

the following week. The respondent failed to forward the final estate papers. When N.W. did not receive the final estate papers, he began calling the respondent almost every day.

"39.     On January 9, 2017, N.W. sent the respondent a handwritten note indicating that if the respondent did not contact him within . . . ten days, N.W. would contact the disciplinary administrator's office.

"40.     On February 27, 2017, N.W. filed a complaint with the disciplinary administrator's office. On March 2, 2017, the disciplinary administrator sent a letter and a copy of the complaint to the respondent. The disciplinary administrator advised the respondent of his duty to cooperate in the investigation of the complaint and directed the respondent to submit a written response to the complaint within 20 days.

"41.     On March 16, 2017, the attorney investigator assigned to investigate the complaint sent the respondent a letter and directed the respondent to provide a written response to the complaint by a date certain. The respondent failed to provide a written response to the complaint.

"42.      On May 15, 2017, the attorney investigator sent the respondent a second letter. The attorney investigator sent a letter to the respondent's office address as well as his home address. Further, the attorney investigator sent a letter by certified mail. The attorney investigator reminded the respondent of his duty to cooperate and directed the respondent to provide a written response to the complaint by a date certain. Finally, the attorney investigator informed the respondent that if the respondent did not provide a written response to the complaint, the attorney investigator would proceed without the respondent's participation. On May 17, 2017, the respondent received the certified letter from the attorney investigator. The respondent did not submit a written response to the complaint.

"*Conclusions of Law*

"43.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.3, KRPC 1.4, KRPC 8.4, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211, as detailed below.

"Service

"44.     The respondent failed to appear at the hearing on the formal complaint. It is appropriate to proceed to hearing when a respondent fails to appear only if proper service was obtained. Kan. Sup. Ct. R. 215 governs service of process in disciplinary proceedings. That rule provides, in pertinent part as follows:

'(a) Service upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last known office address.

. . .

'(c) Service by mailing under subsection (a) or (b) shall be deemed complete upon mailing whether or not the same is actually received.'

In this case, the Disciplinary Administrator complied with Kan. Sup. Ct. R. 215(a) by sending a copy of the formal complaint and the notice of hearing, via certified United States mail, postage prepaid, to the address shown on the respondent's most recent registration. The hearing panel concludes that the respondent was afforded the notice that the Kansas Supreme Court Rules require.

14

"KRPC 1.3

"45.     Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. The respondent failed to diligently and promptly represent L.B., M.B., S.G., and N.W. The respondent failed to timely file the certificate of compliance with the bankruptcy court on behalf of L.B. and M.B. On behalf of S.G., the respondent failed to take action to preserve his bankruptcy case during the period of incarceration. The respondent failed to timely file the inventory in M.W.'s probate case. Additionally, the respondent failed to timely file a petition for final settlement in M.W.'s case. Because the respondent failed to act with reasonable diligence and promptness in representing his clients, the hearing panel concludes that the respondent violated KRPC 1.3.

"KRPC 1.4

"46.     KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' *Id.* The respondent failed to return L.B. and M.B.'s repeated telephone messages. Regarding S.G., the respondent failed to inform S.G. that his bankruptcy case was to be dismissed. Finally, the respondent also failed to return N.W.'s telephone calls. Accordingly, because the respondent failed to keep his clients reasonably informed regarding the status of the matters and promptly comply with reasonable requests for information, the hearing panel concludes that the respondent violated KRPC 1.4(a).

"KRPC 8.4(d)

"47.     'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent's lack of attention to S.G.'s bankruptcy case prejudiced justice. S.G. made years of payments on his bankruptcy. When he had less than two payments left, S.G. was incarcerated and temporarily unable to make the payments. The respondent's inaction was prejudicial to the administration of justice. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

15

"Kan. Sup. Ct. R. 207(b)

"48.     Lawyers must cooperate in disciplinary investigations. Kan. Sup. Ct. R. 207(b) provides the requirement in this regard.

> 'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

Kan. Sup. Ct. R. 207(b). The respondent knew that he was required to forward a written response to the initial complaints—he had been repeatedly instructed to do so in writing by the disciplinary administrator and the attorney investigators. Because the respondent knowingly failed to provide a timely written response to L.B. and M.B.'s complaint and because the respondent failed to provide a written response to the complaints filed by S.G. and N.W., the hearing panel concludes that the respondent repeatedly violated Kan. Sup. Ct. R. 207(b).

"Kan. Sup. Ct. R. 211(b)

"49.     The Kansas Supreme Court rules require an attorney to file an answer to a formal complaint filed against him. Kan. Sup. Ct. R. 211(b) provides:

> 'The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

Kan. Sup. Ct. R. 211(b). The respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a timely written answer to the formal complaint. Accordingly, the hearing panel concludes that the respondent violated Kan. Sup. Ct. R. 211(b).

16

"50.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"51.     *Duty Violated*. The respondent violated his duty to his clients to provide diligent representation and adequate communication. The respondent violated his duty to the legal system when he cause[d] prejudice in S.G.'s case. Finally, the respondent violated his duty to the legal profession to cooperate in disciplinary investigations.

"52.     *Mental State*. The respondent knowingly violated his duties.

"53.     *Injury*. As a result of the respondent's misconduct, the respondent caused actual injury to his clients, the legal system, and the legal profession.

"54.     *Aggravating and Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

> a.  *Prior Disciplinary Offenses*. The respondent has been previously disciplined on three occasions:

> 1)  In 1987, the respondent was informally admonished following a formal hearing in W3918 for neglecting a matter entrusted to him.

17

2) In 1988, the Kansas Supreme Court censured the respondent for neglecting a matter entrusted to him, in violation of DR 1-102(A)(1), DR 6-101(A)(2), and DR 6-101(A)(3).

3) In 1998, the Kansas Supreme Court placed the respondent on two years probation for having violated MRPC 1.3 (diligence) and MRPC 1.4 (communication).

b. *A Pattern of Misconduct*. The respondent engaged in a pattern of misconduct. He failed to diligently represent all three clients and he failed to properly communicate with all three clients. Further, the respondent's previous disciplinary cases involved similar circumstances.

c. *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.3, KRPC 1.4, KRPC 8.4, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211. Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

d. *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. The respondent failed to provide written responses to two of the complaints in this case. The respondent was repeatedly instructed to provide written responses. Additionally, the respondent failed to file an answer to the formal complaint. Finally, the respondent failed to attend the hearing on the formal complaint. The respondent's neglect of the disciplinary case amounts to bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules and orders of the disciplinary process.

18

e. *Refusal to Acknowledge Wrongful Nature of Conduct*. During his sworn statement, the respondent did not acknowledge his misconduct.

f. *Vulnerability of Victim*. The respondent's clients were vulnerable to the respondent's misconduct.

g. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1975. At the time of the misconduct, the respondent ha[d] been practicing law for approximately 40 years.

"55. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found no mitigating circumstances present.

"56. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.41 Disbarment is generally appropriate when:

(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.'

19

"57.    The disciplinary administrator recommended that the respondent be disbarred.

"58.    The ABA Standards for Imposing Lawyer Sanctions are particularly helpful to the hearing panel in this case. The respondent violated fundamental duties owed to his clients—the duty to provide diligent representation and adequate communication. Further, the respondent knowingly caused actual serious harm to his clients. Finally, the respondent's misconduct is aggravated by his total failure to participate in the disciplinary investigation and prosecution. Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be disbarred.

"59.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the panel's findings, and the parties' arguments and determines whether KRPC violations exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see also Supreme Court Rule 211(f) (2018 Kan. S. Ct. R. 251) (a misconduct finding must be established by clear and convincing evidence). "Clear and convincing evidence is 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he failed to file an answer. Respondent did not file exceptions to the final hearing report. As such, the panel's factual findings are deemed admitted. Supreme Court Rule 212(c), (d) (2018 Kan. S. Ct. R. 255).

The evidence before the hearing panel establishes by clear and convincing evidence the charged misconduct violated KRPC 1.3 (diligence); KRPC 1.4(a) (client communication); KRPC 8.4(d) (conduct prejudicial to administration of justice); Kansas Supreme Court Rule 207(b) (cooperation with disciplinary investigation); and Kansas Supreme Court Rule 211(b) (timely answer formal disciplinary complaint). We adopt the panel's findings and conclusions.

The only remaining issue is determining the appropriate discipline for respondent's violations. At the panel hearing, the Disciplinary Administrator's office recommended disbarment. The hearing panel unanimously agreed respondent should be disbarred. At the hearing before this court, the Disciplinary Administrator's office again recommended disbarment. The respondent failed to appear, which may be considered an additional aggravator. See *In re Geniuk*, 307 Kan. 509, 520, 411 P.3d 320 (2018); *In re O'Leary*, 303 Kan. 456, 463, 362 P.3d 1092 (2015).

The hearing panel's recommendations are advisory only and do not prevent us from imposing greater or lesser sanctions. Supreme Court Rule 212(f) (2018 Kan. S. Ct. R. 255); *In re Kline*, 298 Kan. 96, 212-13, 311 P.3d 321 (2013). After careful consideration, the court holds the respondent should be disbarred.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Russell W. Davisson be and he is hereby disbarred from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(1) (2018 Kan. S. Ct. R. 234).

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of Russell W. Davisson from the roll of attorneys licensed to practice law in Kansas.

IT IS FURTHER ORDERED that Davisson comply with Supreme Court Rule 218 (2018 Kan. S. Ct. R. 262).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to Davisson and that this opinion be published in the official Kansas Reports.

NUSS, CJ., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1] **REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 118,758 vice Justice Nuss under the authority vested in the Supreme Court by K.S.A. 20-2616.